## I. B. HUDNELL v. STATE.

No. A-4106.    Opinion Filed May 19, 1923.

(214 Pac. 1088.)

(Syllabus.)

**Larceny—Evidence Sustaining Conviction for Grand Larceny.** Evidence examined, and held sufficient to sustain conviction of defendant of the crime of grand larceny.

Appeal from District Court, Washington County; J. R. Charlton, Judge.

I. B. Hudnell was convicted of the crime of grand larceny and he appeals.   Affirmed.

George, Campbell & Ray, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J.   This is an appeal from the district court of Washington county wherein on the 13th day of September, 1921, plaintiff in error, hereinafter referred to as defendant, was convicted of the crime of grand larceny and sentenced to serve a term of two years' imprisonment in the state penitentiary.   The only error assigned is that the evidence is insufficient to sustain the conviction.

The facts are substantially as follows: Harry Bryan was

the proprietor of the Elite Rooms in Bartlesville, Okla. On the 17th of June, 1921, the defendant came to the rooming house and stayed all night, paying $1 for his room. On the next morning he went out in town and looked for work, but, failing to find employment in the capacity of a cook, for which he claims to have been trained, he returned to the rooming house and told the wife of the proprietor that he only had funds enough to feed on a few days, and that he could not get work, and then it was agreed that he might stay at the rooming house and do little chores and other work for his room rent. On the night of June 20, 1921, Harry Bryan put a two-carat diamond ring valued at $900, and a gold watch, chain, and charm, valued at $40, in a glass receptacle in room No. 10 of the rooming house. This occurred at about 1:30 o'clock in the morning at the time Bryan went on duty as clerk at night. Bryan stayed on duty until about 7 o'clock the next morning, when he retired, but it was hot weather, and, instead of going back to room No. 10, Bryan went to bed in room No. 6, which was cooler at that time of the year. Mrs. Bryan went on duty in the office after Bryan had gone to bed. Defendant was sleeping at the end of one of the halls in the rooming house, on a single bed, partitioned off with portieres. Defendant was in bed when Bryan retired that morning.

A short time before noon that day Mrs. Bryan heard a door squeak and went out into the hall, where she discovered the defendant coming out of room No. 10 and locking the door of the same with a pass-key, which was kept hidden under a water cooler in the hall. Defendant's conduct aroused the suspicion of Mrs. Bryan, and she remarked that she could not find her pass-key, whereupon the defendant walked over to the water cooler and said "Here it is," handing her the pass-key. Mrs. Bryan then asked the defendant to "Wait a minute," but instead of waiting the defendant immediately

walked out of the rooming house. Mrs. Bryan then told her husband what she had seen, and he went into room No. 10 and found his watch and diamond ring missing. Bryan searched around the city, that afternoon, but failed to find the defendant until about 7:30 that evening, when he discovered defendant in a pool hall playing pool. Defendant was then arrested and placed in jail, and in the presence of Bryan and one of the officers defendant stated that if he was turned out he could go out and dig the stuff up. Defendant was not turned loose, and later in the evening he had Bryan again call at the jail and told Bryan that, if Bryan would get him out of there, he could dig up the stuff, and when Bryan suggested that an officer go with him defendant said that he had been in "the stir" once, and that he did not intend for the law to double-cross him. None of the stolen property was ever recovered. Defendant denied that he stole the property or that he was in room No. 10 that day, and explained his conversations with Bryan and the officer by the saying that he was asked by Bryan, "Do you know anything about it?" and replied, "No; I don't know, but, Harry, I will do this, if I was out of here, probably I could help you find that stuff; if you have lost it, I probably could help you find it." Defendant denied having refused to let the officer go with him, and denied having told Bryan that he had been in "the stir." Defendant admitted on his examination that he had been convicted of manslaughter in the second degree and had served two years in the Oklahoma state penitentiary from Canadian county.

We deem it unnecessary to enter into a lengthy discussion of the sufficiency of the evidence. If the state's evidence was to be believed, and that was a question for the jury, we think the facts and circumstances detailed by such witnesses sufficient to authorize a verdict of guilty and to sustain the judgment of conviction as rendered on such verdict. It ap-

pears that defendant had a fair and impartial trial. .

The judgment is affirmed.

DOYLE and BESSEY, JJ., concur.